686 A.2d 834

JEFFERSON BANK

v.

NEWTON ASSOCIATES. (6 Cases)

Appeal of MIDDLETON PLACE TOWNHOMES CONDOMINIUM ASSOCIATION, INC. (6 Cases)

Superior Court of Pennsylvania.

Argued Nov. 14, 1996.

Filed Dec. 26, 1996.

656

### 15. Pretrial Procedure ☞25

Pretrial matters, such as request to extend the time period allowed for discovery, are left to the sound discretion of the trial court.

### 16. Pretrial Procedure ☞25

Absent an abuse of discretion, it is for the trial judge to determine the appropriate time period in which parties may conduct discovery.

### 17. Pretrial Procedure ☞25

Proponent of petition to set aside sheriff's sale was not entitled to extension of discovery period where petitioner was afforded more than 60 days in which to produce credible evidence to support its theory of fraud, docket for that period showed no activity with respect to depositions, interrogatories, or requests for discovery, and petitioner failed to show that further time would yield the alleged evidence.

### 18. Mortgages ☞578

Superior Court's review of denial of petitions to set aside sheriff's sale, on ground of fraud in obtaining of judgment in mortgage foreclosure or in conduct of sheriff's sale, was limited to considering whether trial court abused its discretion such that its decision was the result of manifest unreasonableness, or partiality, prejudice, bias, ill-will, or such lack of support as to be clearly erroneous.

### 19. Mortgages ☞529(10)

Condominium association failed to prove that sheriff's sale of condominium units was the result of fraudulent collusion between primary mortgage holder and bidder where only evidence presented in support of allegation, besides bare accusations and personal beliefs, was evidence that bidder and primary mortgage holder had corporate offices next door to each other and that bidder retained same managing agent for the units as the previous owner used.

---

Robert D. Ardizzi, Blue Bell, for appellant.

W. Thomas Tither, Jr., Philadelphia, for Jefferson Bank, appellee.

Before CIRILLO, President Judge Emeritus, and DEL SOLE and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

As may be gleaned from a passing glance at the caption in the instant matter, this case comes before us after taking a lengthy and circuitous journey. Thorough review of the parties and case history is necessary, however, in order to provide meaningful review and dispensation to all of the varied claims.

A number of years ago, Newton Associates, L.P. (Newton), became the record owner of eleven condominium units located at Middleton Place Townhomes in Montgomery County, Pennsylvania. Jefferson Bank (Jefferson) held a first mortgage on all eleven units.

In December of 1991, the Middleton Place Townhomes Condominium Association, Inc. (Middleton) filed a civil action against Newton alleging that Newton had failed to pay the common expense assessment dues that are levied against all unit owners for general maintenance and upkeep of the facility. In May of 1993, Middleton prevailed in its action and secured a judgment against Newton for approximately $126,-000.00.

Middleton had the option of collecting the judgment amount through enforcement of the liens which it had filed against the Newton units; however, it chose to pursue another path. In lieu of enforcement against Newton, Middleton commenced an action against Jefferson, the primary mortgage holder. Middleton's theory of recovery was that Jefferson was a mortgagee in possession during the time period at issue, and thus liable for the debt. This action is currently pending in the Montgomery County Court of Common Pleas.

Subsequently, in March of 1995, Jefferson filed six mortgage foreclosure actions against Newton alleging that Newton had defaulted on the mortgages by failing to pay required

county and school taxes. Newton did not contest the action, and shortly thereafter, Jefferson obtained a $254,783.89 judgment against Newton. Jefferson then filed a writ of execution for the purpose of selling the six units at a sheriff's sale.

Prior to the sheriff's sale, Jefferson assigned its judgment award to Shell Real Estate (Shell), a newly incorporated enterprise. In consideration for this transfer, Shell agreed to re-sell the units and pay the balance of Jefferson's mortgage loans using the proceeds thereof.

On September 20, 1995, the sheriff's sale was held and Shell was the sole and, therefore, successful bidder for each unit in question. By operation of law, Middleton's liens on the units were thereby extinguished. Shell had previously entered into agreements with several third parties to re-sell the units. This was to be accomplished at the sale, through assignment of Shell's bid to the buyer and issuance of title from the sheriff directly to the buyer.

On November 30, 1996, Middleton filed six petitions to set aside the sheriff's sale on the basis of fraud, thereby automatically staying the sheriff's issuance of deeds to the prospective third party buyers. In its petitions, Middleton averred that Shell was in actuality the alter ego of Jefferson and was incorporated solely to act as Jefferson's agent at the sale.

In response to this, Jefferson filed six emergency motions to strike the petitions, as well as an answer to the same. In essence, Jefferson contended that Middleton failed to properly plead is cause and had not alleged facts rising to fraud sufficient to set aside the sheriff's sale. Argument was heard on February 28, 1996, after which Jefferson's motions were granted in part; as to unit numbers 502, 507 and 609.

On April 3, 1996, after hearing further argument, Middleton's remaining petitions to set aside sheriff's sale were denied.

In this consolidated appeal, Middleton challenges both the trial court order partially granting Jefferson's motions to strike the petitions as well as the later trial court order denying the remaining petitions to strike the sheriff's sale.

■ Before reviewing the propriety of the trial court's actions, we must first address the claim made by appellees Shell Real Estate and Jefferson that we should dismiss this appeal as moot. This is so because it is only in rare circumstances that a moot question will be decided by our Court. *See, e.g., Erie Ins. Exchange v. Claypoole,* 449 Pa.Super. 142, 151–52, 673 A.2d 348, 353 (1996); *Commonwealth v. Sal–Mar Amusements, Inc.,* 428 Pa.Super. 321, 326–27, 630 A.2d 1269, 1272 (1993).

■ In general, an actual case or controversy must exist at every stage of the proceedings. A change in either the law or facts may result in a finding of mootness; thus rendering an opinion of this court advisory in nature. *See, e.g., In Re Gross,* 476 Pa. 203, 207–09, 382 A.2d 116, 119 (1978); *Erie,* 449 Pa.Super. at 151–52, 673 A.2d at 353.

Appellees contend that our Supreme Court's holding in *Ridley Park Shopping Center, Inc. v. Sun Ray Drug Co.,* 407 Pa. 230, 180 A.2d 1 (1962), controls the disposition of this appeal. In *Ridley Park,* a lessor of commercial property brought a declaratory judgment action against his lessee for wrongful occupation of the premises. After receiving an adverse decision in the trial court and in this Court, the lessor appealed to our Supreme Court. In a well-reasoned opinion, our Supreme Court held that the lessor's subsequent transfer of the property after taking his appeal resulted in a change in facts that rendered the appeal moot.

■ Presently, appellees argue that this appeal is moot because titles to all of the condominium units at issue were transferred to third parties subsequent to appellant's filing of its notice of appeal. This is a specious argument, for it ignores the essential fact that, in the present appeal, it was appellees who transferred the properties after appellant took its appeal. This is a distinction with a difference, because our courts have never held that an adverse party may create mootness through deliberate factual manipulation.

Appellant has always maintained that its interests were violated by way of a fraudulent sheriff's sale. Appellant has

taken no action which would divest it of a real interest in the outcome of these proceedings, and appellees' unilateral actions to that effect will not result in a finding a mootness. We will, therefore, review the substance of appellant's claims.

Both of appellant's arguments concern the trial court's disposition of appellant's petitions to set aside the sheriff's sale; whether through partially granting Jefferson's motions or through dismissing the remainder of appellant's petitions. Therefore, at the outset, we will discuss the standard of review to be applied to both arguments.

A petition to set aside a sheriff's sale invokes the equitable powers of a trial court. The burden of proof rests upon the proponent of the petition to show by clear and convincing evidence that the circumstances warrant relief. The trial court's ultimate disposition of the matter will not be disturbed upon review absent a finding of an abuse of discretion. *See, e.g., Resolution Trust Corp. v. Warwick Nurseries, Ltd.,* 450 Pa.Super. 200, 201–03, 675 A.2d 730, 731 (1996); *Greater Ptsbgh. Bus. Dev. v. Braunstein,* 390 Pa.Super. 454, 456–58, 568 A.2d 1261, 1263 (1989).

Initially, appellant contends that the trial court abused its discretion in partially granting Jefferson's motions to dismiss appellant's petitions to set aside the sheriff's sale. In support of this, appellant presents two arguments.

First, appellant contends that, at the time that the motions were filed, Jefferson had no standing to address the court. This contention is based upon the fact that Jefferson had transferred its judgment award against appellant to Shell prior to the sale. In appellant's view, this assignment left Jefferson with no interest in the subject units.

One of the most stalwart propositions of the law is that, in order to maintain an action, a party must have standing; a stake in the outcome of the proceedings. We have previously held that to have standing, a litigant must have a direct, immediate and substantial interest in the outcome of the litigation. An interest is substantial if it surpasses the common interest of the general citizenry in assuring that the law

is upheld. An interest is direct if there exists a causal connection between the matter complained of and the harm caused to the party's interest. Finally, an interest is immediate if the interest that the party seeks to protect is within the zone of interests guaranteed by the statute in question. *See, e.g., Sprague v. Casey*, 520 Pa. 38, 43–45, 550 A.2d 184, 187 (1988); *In Interest of Garthwaite*, 422 Pa.Super. 280, 281–83, 619 A.2d 356, 357–58 (1993).

We find that, at the time Jefferson submitted its motions, it had the type of direct, immediate and substantial interest contemplated by our prior holdings. The petitions filed by appellant worked to automatically stay the issuance of deeds to the third party buyers. This, in turn, forestalled Shell's ability to fulfill its obligation to Jefferson to re-pay the mortgage balances with the sale proceeds.

We have held that this type of pecuniary interest in the outcome of legal proceedings fulfills the standing requirements. *See, e.g., Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 192–95, 346 A.2d 269, 281–82 (1975). Therefore, we find that the trial court did not abuse its discretion by entertaining a motion from Jefferson, and appellant's argument with regard to standing is without merit.

Next, appellant argues that the trial court abused its discretion in partially granting Jefferson's motions because the time period set for discovery had not yet elapsed. This argument is likewise without merit.

In its petitions to set aside the sheriff's sale, appellant claimed that the sale was fraudulent and that the outcome was predetermined due to collusion among Jefferson, Shell and Newton. Essentially, appellant asserted that Shell was the alter ego of Jefferson, and was incorporated primarily to allow Jefferson to surreptitiously bid on the properties at the sale while at the same time extinguishing appellant's liens. Newton's alleged role was to allow the foreclosure to proceed smoothly by not contesting Jefferson's notices of mortgage

foreclosure.[1]

While this conspiracy theory presents a rather intriguing scenario, it was not supported by one iota of record evidence. Indeed, the petition is replete with statements such as "Middleton believes and therefore avers." One's belief alone is woefully insufficient, and does not begin to rise to the level of clear and convincing proof necessary to warrant the granting of a petition to set aside a sheriff's sale. Absent convincing support of the material allegations in the petition, a trial judge acts within his discretion in denying the petition. *See Greater Ptsbgh. Bus. Dev.,* 390 Pa.Super. at 456–58, 568 A.2d at 1263.

As an addendum to this argument, appellant contends that the trial court erred in refusing appellant's request to extend the time period allowed for discovery. Pre-trial matters such as this are left to the sound discretion of the trial court. Absent an abuse of discretion, it is for the learned trial judge to determine the appropriate time period in which parties may conduct discovery. *See, e.g., Iron Worker's S & L v. IWS, Inc.,* 424 Pa.Super. 255, 273–75, 622 A.2d 367, 377 (1993); *Kerns v. Methodist Hosp.,* 393 Pa.Super. 533, 543–44, 574 A.2d 1068, 1073 (1990).

In the instant matter, appellant was afforded over sixty days in which to produce credible evidence to support its theory of fraud. During that time period, the docket shows no activity with respect to depositions, interrogatories, requests for discovery, etc. We hold that it was not an abuse of discretion for the trial court to refuse appellant's motion for continuance when appellant had a reasonable time period in which to conduct discovery, failed to produce credible evidence, and failed to demonstrate that further time would yield the alleged evidence.

**1.** At no time does appellant attempt to explain its own absence at the sheriff's sale. Even if appellant's accusations were correct, it surely would have behooved appellant to attend the sale and bid on the properties in order to protect its interest.

In light of the foregoing, we cannot say that the trial court abused its discretion in partially granting Jefferson's motions to strike appellant's petitions to set aside the sheriff's sale. Jefferson had standing to present the motions, and appellant had not presented credible, convincing, evidence in support of its fraud theory.

Next, appellant contends that the trial court abused its discretion in denying its remaining petitions to set aside the sheriff's sale. As with the first issue, appellant supports this argument with several, independent, theories.

First, appellant repeats the standing argument presented previously, to the effect that Jefferson had no interest to protect at the time it opposed appellant's petitions. For the reasons already articulated, we reject this argument.

Appellant also repeats the argument that the trial court improperly refused to extend the time for discovery. This argument has likewise been addressed by this Court and has proven baseless as an avenue of relief for appellant.

Finally, appellant argues that the trial court erred in concluding that appellant failed to prove his allegations of fraud with respect to the circumstances surrounding the sheriff's sale. In order to carry its burden with respect to this matter, appellant was required to prove fraud either in the obtaining of the judgment in mortgage foreclosure, or in the conduct of the sheriff's sale. *See, e.g., Roberts v. Gibson,* 214 Pa.Super. 220, 222–24, 251 A.2d 799, 801 (1969).

As previously discussed, appellant presented no more than bare accusations and personal beliefs that the sale was the result of a fraudulent collusion. Appellant has repeated these arguments to this Court and has gone so far as to admit that "[t]he above actions standing alone do not constitute fraud against Middleton sufficient to set aside the Sheriff sale of the subject units." (appellant's brief at 24).

Thereafter, appellant attempts to shore up its argument by noting that Shell and Jefferson have corporate offices next door to each other in Philadelphia and that Shell has continued

to retain the same managing agent for the units as Newton previously used.

Without commenting upon the impact, if any, of these two additional facts, we note that it is not for this Court to re-weigh and re-assess the evidence presented to the trial court. Our review in this matter is limited to considering whether the trial court abused its discretion such that its decision was the result of "manifest unreasonableness, or partiality, prejudice, bias, ill-will, or such lack of support as to be clearly errone-ous." *Paden v. Baker Concrete Construction, Inc.*, 540 Pa. 409, 411–13, 658 A.2d 341, 343 (1995).

Presented with this quantum of evidence, we cannot find that the trial court abused its discretion in denying appellant's remaining petitions. Appellant was required to prove fraud, not merely allege fraud, and this Court agrees with the trial court that appellant did not sustain its burden of proof.

The orders of the trial court are affirmed.